# United States Bankruptcy Court, Northern District of Illinois

| JUDGE | Janet S. Baer | Case No. | 16 B 40442 |
|---|---|---|---|
| DATE | February 5, 2019 | Adversary No. | |
| CASE TITLE | Gerald O. McInerney | | |
| TITLE OF ORDER | Order Granting in Part Special Counsel's Application for Final Compensation and Authorization to Pay Allowed Administrative Claim (ECF No. 116) and Sustaining in Part Debtor's Objection (ECF No. 117). | | |

**DOCKET ENTRY TEXT**

The Court grants in substantial part special counsel Gregory K. Stern, P.C.'s application for final compensation and authorization to pay allowed administrative claim, sustains in part the Debtor's objection, and allows final compensation to special counsel in the amount of $12,126.50.

[For further details see text below.]

## STATEMENT

This matter is before the Court on the Application of special counsel Gregory K. Stern, P.C. ("Counsel") for Final Compensation and Authorization to Pay Allowed Administrative Claim (the "Application"). Counsel requests allowance of an administrative claim for services rendered as special counsel to trustee Gina Krol (the "Trustee") in this chapter 7 case in the amount of $12,829.50. The Debtor has objected to Counsel's Application and asks the Court to disallow or greatly reduce the hourly rate for the majority of the compensation sought by Counsel.

The Court has carefully reviewed Counsel's Application, the Debtor's objection, Counsel's response, the Debtor's reply, the exhibits attached to all of those documents, the relevant case law, the bankruptcy docket, and other related documents in the case. Based on that review, and for the reasons stated in further detail below, the Court grants in substantial part the Application, sustains in part the objection, and allows final compensation to Counsel in the amount of $12,126.50.

The Debtor filed this chapter 7 case on December 27, 2016. A high-income individual, the Debtor listed in his original schedules various pieces of property, including a home in Oak Brook, Illinois, valued at $725,000; an unencumbered condominium in Florida valued at $125,000; and three vehicles, two of which are unencumbered. The Debtor also listed five secured debts, two of which are allegedly related to business guarantees; two unsecured student loan debts; and a very large unsecured debt owed to the Small Business Administration (the "SBA"), which is also related to a business guaranty. (Docket No. 14.) At the time the Debtor filed his bankruptcy case, the SBA was apparently engaged in or had been engaged in certain collection activities and had garnished the Debtor's wages and Social Security benefits. (Docket No. 17.) It appears that the

1

chapter 7 case was filed to address the business guaranty debts, particularly the one owed to the SBA.

During the course of the bankruptcy case, an initial report of assets was filed, a claims bar date was set, claims were filed, claim objections were made, the SBA claims in the total amount of about $514,200 were disallowed in their entirety, and the Debtor received a discharge.

The Debtor's objection to Counsel's fee request focuses primarily on two issues. First, the Debtor alleges that most if not all of the services rendered by Counsel were outside the scope of Counsel's retention and/or should have been performed by the Trustee. Second, the Debtor claims that virtually none of the services rendered were necessary and that Counsel's actions did not result in any recoverable amounts for the estate or its creditors. The Debtor also alleges that Counsel filed "false proofs of claim on behalf of creditors possibly to create a fund to pay administrative expense[s] and/or engaged in other heavy-handed, if not unethical, conduct." (Docket No. 117 at 10.) In support of his objection, the Debtor filed a detailed spreadsheet in which he reviewed each of Counsel's time entries and indicated why the corresponding fees should be disallowed. According to the Debtor, the services are objectionable because: (1) they were outside the scope of retention; (2) they should have been performed by the Trustee; (3) they did not provide any conceivable benefit to the estate; and/or (4) routine services were billed at excessive hourly rates. (*Id.*, Ex. 1.)

### (1) Services Outside the Scope of Retention and Those That Should Have Been Performed by the Trustee

The typical chapter 7 debtor has no assets and little to no income. In contrast, the Debtor here is a high-income individual with substantial assets and unsecured debt not commonly found in chapter 7 cases. Such circumstances in the context of chapter 7 raise red flags for the Trustee, as well as the Court and the United States Trustee.

In any chapter 7 case, it is the trustee's duty to review the debtor's petition, schedules, and statement of financial affairs in order to assess the debtor's situation, including whether there are assets to administer and whether there is any reason that the debtor may not be entitled to a discharge. *See* 11 U.S.C. § 704 (specifying the duties of the trustee); *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991) (explaining that the bankruptcy system is designed to help the "'honest but unfortunate debtor'").

Upon her appointment, the Trustee in this case presumably began her review of the Debtor's situation, proceeded with her preliminary investigation, conducted the initial 341 meeting of creditors, and then moved to employ her own firm as counsel in the case, which was ordered on March 10, 2017. (Docket No. 32.) About two months later, the Trustee moved to retain Counsel, which was ordered on May 12, 2017. (Docket No. 40.) By that time, both the Trustee and the U.S. Trustee had obtained extensions of time to file objections to the Debtor's exemptions and/or discharge (Docket Nos. 30, 31, 35), and the 341 meeting had been continued four times (Docket Nos. 19, 22, 34, 36).

2

The Trustee's retention of Counsel under these circumstances, almost five months into the case, is not unusual and was, in fact, appropriate. At that point, the Trustee knew that further investigation was needed and decided to hire Counsel. And, although the Trustee's application to employ indicated that Counsel was being retained "to represent the Trustee . . . to pursue objections to exemptions, objections to discharge and recovery of preferences and fraudulent transfers" (Docket No. 37), the order permitting employment of Counsel did not limit the scope of Counsel's retention (Docket No. 40).

Accordingly, the Court finds that it was reasonable and appropriate for Counsel, rather than the Trustee, as part of the scope of Counsel's employment, to continue with the investigation that the Trustee had begun. The Court further finds that the services rendered by Counsel were not the type of services that are expected to be provided by the Trustee. As a result, the Debtor's objection to Counsel's fees based on his allegations that Counsel's services were outside the scope of retention and/or were services that should have been performed by the Trustee is overruled.

### (2) Services Unnecessary and Providing No Benefit to the Estate

The Debtor also alleges that virtually none of the services rendered by Counsel were necessary and that Counsel's actions did not result in any recoverable amounts for the estate and its creditors. The Court overrules the Debtor's objection to Counsel's fee request based on these allegations. The fact that Counsel ultimately did not file either an objection to the Debtor's discharge or any preference or fraudulent transfer actions does not mean that the investigation and other actions undertaken by Counsel were not necessary. Further, although the Court may consider the results that an attorney achieves in a case, such results are not the Court's primary focus in reviewing a fee application.

Counsel for the trustee is compensated pursuant to 11 U.S.C. § 330,[1] which does not provide for a results-based or contingent fee compensation system.[2] Rather, under § 330, compensation must be "reasonable" and "for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). In determining the amount of compensation to be awarded to counsel for the trustee, the Court must "consider the nature, the extent, and the value of such services [rendered], taking into account all relevant factors," including the time spent, the rates charged, "whether the services were necessary to the administration of, or beneficial *at the time at which the service[s] [were] rendered* toward the completion of, [the] case," and "whether the services were performed within a reasonable amount of time." 11 U.S.C. § 330(a)(3) (emphasis added).

The investigation that Counsel undertook in this case, the claims that Counsel filed, and the other matters that Counsel pursued were all within the range of services that were necessary for the administration and completion of the case. The Court does not find that the tasks in which Counsel engaged were done inappropriately or, specifically, to create a fund to pay administrative

---

[1] All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

[2] In contrast, a *trustee's* compensation is limited by a calculation based on the amount of moneys disbursed or turned over in the case. 11 U.S.C. § 326(a).

3

expenses as alleged by the Debtor. (Docket No. 117 at 4, 10, 11.[3]) Although there are ultimately no unsecured creditors left to pay, that was not the situation when this case began. It took time and effort to address all of the unsecured claims that were filed, and the circumstances justified the work that Counsel did in this case.

In objecting to Counsel's actions in connection with proofs of claim in particular, the Debtor contends that Counsel should have simply waited for the outcome of the claims filing and claims disallowance processes. Instead of "standing still and awaiting the outcome," the Debtor says, Counsel "became an active supporter of creditors and an antagonist of the Debtor." (Docket No. 127 at 11-12.) Although the Court can understand why the Debtor may have wanted Counsel to wait, doing so could have been viewed as a breach of the Trustee's duties to the estate, and, in any event, the Debtor's proposed strategy is not what the Court must consider in reviewing the fee request at issue.

As indicated above, this was not a typical chapter 7 case. In addition to the Debtor being a high-income wage earner and having substantial assets, the reasons that he filed a chapter 7 bankruptcy petition and the goals that he hoped to achieve by doing so influenced what occurred over the course of the case and what the Trustee, Counsel, and the U.S. Trustee had to investigate.[4] Specifically, the Debtor apparently filed the case to address certain business guaranty debts and to stop the SBA from garnishing both his wages and his Social Security benefits. Ultimately, the SBA's claims were disallowed in their entirety. In order to achieve this result, the Debtor had to both submit himself to the jurisdiction of the Court and submit his financial affairs to the scrutiny and review of the Trustee and the U.S. Trustee. Although the Debtor may have believed that his actions were perfectly appropriate, his motives pure, and his disclosures complete, this case was not that simple. The strategy and approach implemented by the Debtor raised issues that justified Counsel's actions. The time spent by Counsel investigating and pursuing certain matters was reasonable and appropriate and by no means "heavy-handed" or "unethical" as alleged by the Debtor. (Docket No. 117 at 4.)

---

[3] The Court has thoroughly considered the Debtor's allegations that the Trustee was "fabricat[ing]" unsecured claims in an effort to create a fund to pay itself and Counsel and that the Trustee was offering to resolve a tax issue and other matters in the case in exchange for the payment of its fees. (Docket No. 117 at 10-12.) The Court has likewise carefully examined Counsel's responses to these allegations. It is unfortunate to see personal attacks made by both attorneys in the documents filed in this matter. Part of the problem here, as pointed out by Counsel, is that "[t]he Debtor expected [Counsel] to take his representations and explanations regarding every dispute and issue as being truthful and accurate without the need for independent review and analysis. That is not how the [c]hapter 7 process works." (Docket No. 123 at 1, ¶ 1.) Although the goals and actions of the Debtor and his attorney may have been pure, that is not always the case. It is the job of trustees and their attorneys to determine if debtors are being forthright and truthful or if they have engaged in dishonest or otherwise wrongful conduct.

[4] In the months prior to the Debtor filing the chapter 7 case, his non-filing spouse apparently relocated her primary residence from the marital home in Oak Brook to their jointly-owned condominium in Florida. Additionally, in the month prior to the bankruptcy filing, the Debtor disposed of a property that he and his wife owned in LaGrange, Illinois, deposited the net proceeds into a joint checking account, and thereafter paid off his children's student loan debt. These are the kinds of actions that a trustee and the U.S. Trustee are required to investigate.

The Debtor also objects to the fees that Counsel incurred in connection with a motion filed by the Trustee for turnover of the Debtor's 2016 tax refund.[5] The amount at issue in the turnover matter is approximately $2,300. (Docket No. 90.) According to the Debtor, the time spent by Counsel on the turnover motion exceeds "any possible benefit" to the bankruptcy estate. (Docket No. 127 at 8.) The Court overrules the Debtor's objection to the fee request based on this and related allegations.

The turnover dispute relates to a post-petition "allocation" agreement between the Debtor and his non-filing spouse. (Docket No. 90.) Debtor's counsel has indicated that he is not billing the Debtor for his substantial work on this matter but is using the Trustee's turnover motion "to correct and improve the law for the benefit of our nation's bankruptcy courts concerning the frequently encountered issue of, and the longstanding analytical problem over, the proper method of dividing joint income tax refunds between a debtor and a non-debtor spouse." (Docket No. 117 at 3 n.4.) In order to do so, Debtor's counsel produced both an initial and supplemental response, along with 100 pages of exhibits. (*See* Docket Nos. 93 & 98.)

Although Debtor's counsel may pursue his objection to the turnover motion and the Court has a duty to take up the issue, Debtor's counsel's attempt to change the law must not be done at the expense of Counsel. It was completely appropriate for the Trustee to file the turnover motion in order to try to resolve the matter in a practical way, given the relatively small amount at issue. Counsel is entitled to be compensated for the time spent working on the turnover dispute.

### (3) Routine Services Billed at Excessive Hourly Rates

In reviewing Counsel's Application and the Debtor's coded objections to the itemized fees, the Court sustains the Debtor's objection on one point. In a few instances, the Court finds that routine services rendered by Counsel were billed at excessive hourly rates. These services are as follows:

| DATE | ATTY | SERVICE PROVIDED, HOURS, FEE |
|---|---|---|
| 05/22/2017 | MCO | Motion to Extend Time to Object to Discharge and Motion to Extend Time to Object to Exemption, Notices and Orders (0.60) ($270.00) |
| 05/23/2017 | GKS | Reviewing and revising draft of T's Motion to Extend Time to File Objections to Exemptions – notes to MCO re same (0.20) ($93.00) |
| 09/07/2017 | MCO | Draft Motion to Extend Time to Object to Debtor's Exemptions, Notice and Order (0.60) ($270.00) |
| 12/15/2017 | MCO | Draft Motion to Extend Time to Object to Discharge, Notice and Proposed Order (0.30); Draft Motion to Extend Time to Object to Exemptions, Notice and Proposed Order (0.30) ($270.00) |
| 02/07/2018 | MCO | Draft Motion to Extend Time to Object to Discharge and Motion to Extend Time to Object to Exemptions, Notices and Orders (0.80) ($360.00) |

---

[5] The dispute regarding this refund is currently under advisement.

5

These matters were essentially the same motions filed on four separate occasions. They were routine motions that were very similar, if not identical, and could have been prepared by a legal assistant at a much lower rate than those charged by Monica C. O'Brien and Gregory K. Stern. As a result, the Court will reduce the rate charged for these services to $200.00 per hour and thus reduce the total of the $1,263.00 requested for these 2.8 hours of service to $560.00.

For the foregoing reasons, the Court grants in substantial part Counsel's Application, sustains in part the Debtor's objection, and allows final compensation to Counsel in the amount of $12,126.50.

DATED: **February 5, 2019**            **ENTERED**:

_____
Janet S. Baer
United States Bankruptcy Judge