# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 16 B 40442 |
| | ) | |
| GERALD O. McINERNEY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion filed by Gina B. Krol (the "Trustee"), chapter 7 trustee for the bankruptcy estate of Gerald O. McInerney (the "Debtor"), for turnover of the estate's interest in the Debtor's federal and state income tax refunds for 2016 pursuant to 11 U.S.C. §§ 541 and 542.[1] At issue is the proper allocation of those income tax refunds filed jointly by the Debtor and his non-debtor spouse. For the reasons set forth below, the Court holds that the appropriate method of allocating the refunds between the Debtor and his spouse is the "Withholding Rule." Applying that Rule, the Court finds that, absent adjustments as discussed herein, the estate's interest in the refunds totals $6,254.91, and the Debtor is ordered to turn over to the Trustee, in addition to the amount already tendered, the sum of $5,035.42. As such, the Trustee's motion is granted in part and denied in part.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (E).

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

## BACKGROUND

The material facts in this matter are undisputed. Those facts, gleaned from the docket, the parties' papers, and the exhibits attached thereto, are as follows.

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 27, 2016 (the "Petition Date"). (Bankr. No. 16-40442, Docket No. 1.[2]) He did not disclose in either his original or amended schedules any anticipated tax refund owed to him. (*See* Docket Nos. 14 & 55.)

About eleven months after the Petition Date, on November 10, 2017, the Debtor and his non-debtor spouse executed a document entitled "Spousal 2016 and Later Years' Income Tax Allocation Agreement" (the "Agreement"). (Docket No. 90, Ex. A.) The purpose of the Agreement is "to avoid . . . dispute[s] over the allocation of any joint refund and/or the burden of any balance due" in tax years in which the Debtor and his spouse file a joint tax return. (*Id.*) For 2016 and any tax year thereafter in which the Debtor and his spouse file joint returns, the Agreement provides as follows:

> Each spouse shall determine and be credited with his or her own contributions (that is, payments and refundable credits) on a separate basis. Payments made from a joint account shall be equitably traced to the spouse whose funds are deemed to have supplied such monies.

> Each spouse shall also determine his [or her] separate income tax liability (net of other credits) on a pro forma married filing separately basis.

> The pro forma separate income tax liability (net of other credits) shall then be reduced by 50% of the aggregate benefit from filing on a joint basis determined by reference to the combined pro forma separate tax liabilities (net of other credits) of the spouses. (This 50/50 split is in recognition of the facts (i) that neither of us can compel the other to file

---

[2] All docket references in this Memorandum Opinion are to Bankr. No. 16-40442.

> a joint return, and (ii) that by agreeing to file a joint return, each spouse takes on personal liability for the other's own tax liability). [sic]
>
> Each spouse's share of the joint refund or joint balance due, as the case may be, shall then be determined by subtracting that spouse's contributions from that spouse's adjusted share of separate income tax liability (net of other credits).

(*Id.*) The Debtor's attorney acknowledges that the Agreement was drafted and executed on his own initiative in order to "reflect the principles set forth" in the Debtor's response to the Trustee's turnover motion. (Docket No. 98 at 8.) The Trustee was not advised of nor did she agree to the terms of the Agreement in connection with the Debtor's 2016 tax returns. (Docket No. 90 ¶ 8.)

On or about November 15, 2017, five days after executing the Agreement, the Debtor and his non-debtor spouse filed their joint federal and state income tax returns for 2016.[3] (*See* Docket No. 93, Exs. B-1 & B-2.) Pursuant to those returns, the joint wages for the Debtor and his spouse were $223,374; they also had income of $90,381 from ordinary dividends, pensions, and Social Security payments. (*Id.*) After accounting for taxable refunds, credits, or offsets, as well as capital and supplemental losses, their adjusted gross income ("AGI") was $283,636. (*Id.*)

The Debtor and his spouse made payments toward both their federal and state income taxes through withholding and/or estimated payments. Their federal tax return reflects that the total of withholding and estimated payments was $54,971, which, after subtracting the tax liability of $49,688, resulted in a joint federal overpayment of $5,283. (*Id.*, Ex. B-1.) Their state tax return indicates that the total of withholding and estimated payments was $8,425, which, after subtracting

---

[3] Both the federal and state income tax returns "went on extension" to mid-October 2017. (*See* Docket No. 93, Ex. A.)

the tax liability of $6,630, resulted in a joint state overpayment of $1,795. (*Id.*, Ex. B-2.) Based on

both overpayments, the Debtor and his spouse received tax refunds totaling $7,078 for 2016.

The dollar figures corresponding to the amounts above for the Debtor and his spouse

separately were calculated and reflected on hypothetical married-filing-separately tax returns,

prepared by the Debtor's attorney, who is also a certified public accountant, and submitted as

exhibits to the Debtor's response to the Trustee's motion for turnover. (*See id.*, Exs. C-1, C-2, D-1

& D-2.) According to those returns, the Debtor's wages were $212,894; he also had income of

$36,317 from pension and Social Security payments received in 2016. (*Id.*, Exs. C-1 & C-2.) After

adjustments, the Debtor's AGI was $234,152. (*Id.*) The Debtor's spouse's wages were $10,480; she

also had income of $54,064 from pension payments and ordinary dividends. (*Id.*, Exs. D-1 & D-2.)

After adjustments, her AGI was $49,484.[4] (*Id.*)

According to their jointly filed federal tax return, the Debtor and his spouse claimed one tax

credit, a residential energy credit, of $300. (*Id.*, Ex. B-1.) That credit was apportioned equally

between the spouses, with each claiming $150. (*Id.*, Exs. C-1 & D-1.)

Through withholding and estimated payments, the Debtor paid a total of $56,045 in taxes for

2016–$47,922 in federal taxes and $8,123 in state taxes.[5] (*Id.*, Exs. C-1 & C-2.) The Debtor's

---

[4] The Debtor and his spouse equally divided the dollar amounts of the adjustments: $450 for taxable
refunds, credits, or offsets of state and local income taxes ($449 for the Debtor's spouse); a capital loss of $1,500
each; and a supplemental loss of $14,009 each. (*See* Docket No. 93, Exs. C-1 & D-1.)

[5] Of the $47,922 that the Debtor paid in federal taxes, $46,262 was withheld from his income and $1,660
were estimated payments. (*Id.,* Ex. C-1.) Of the $8,123 that the Debtor paid in state taxes, $7,983 was withheld
from his income and $140 were estimated payments. (*Id.*, Ex. C-2; *but see id.*, Ex. B-2 (indicating that there were no
estimated payments made for state taxes).)

4

spouse paid a total of $7,375 in taxes through withholding and estimated payments–$7,049 in federal

taxes and $326 in state taxes.[6] (*Id.*, Exs. D-1 & D-2.)

Based on the Agreement, and an allocation analysis prepared by the Debtor's attorney, the

Debtor voluntarily tendered $1,219.49 to the Trustee on or around January 10, 2018. (*See id.*, Ex.

A; *see also* Docket No. 90 ¶ 10.) According to the Debtor, that amount represents the bankruptcy

estate's interest in the 2016 refunds. (*Id.*)

Disagreeing with the Debtor's analysis, the Trustee filed the instant motion for turnover on

February 8, 2018. The Trustee argues that the Debtor's calculations are based on the Agreement,

which she neither authorized nor approved. The Trustee further contends that the case law supports

the equal division of the joint refunds between the Debtor and his non-debtor spouse. Thus, the

Trustee demands turnover of an additional $2,280.41, for a total of $3,499.90.[7] (Docket No. 90 ¶

11.)

On February 14, 2018, the Debtor filed his response to the Trustee's turnover motion, urging

the Court to apply and adopt the methodology used by his counsel, and set forth in the Agreement,

in allocating the refunds. That "hybrid" methodology divides the tax refunds equally between the

Debtor and his spouse, but only to allocate the portion of the refunds equal to the dollar amount of

---

[6] Of the $7,375 that the Debtor's spouse paid in federal taxes, $5,389 was withheld from her income and $1,660 were estimated payments. (*Id.*, Ex. D-1.) All of the $326 that she paid in state taxes was through withholding. (*Id.*, Ex. D-2.)

[7] Because the Debtor's bankruptcy case was filed on the 361st day of 2016, the Trustee's figures are derived as follows:

$$\$7,078 \text{ (total refund)} \div 365 \text{ days} = \$19.39 \text{ per diem;}$$
$$\$19.39 \text{ per diem} \times 361 \text{ days} = \$6,999.79;$$
$$\$6,999.79 \div 2 \text{ (divided equally between the Debtor and his spouse)} = \$3,499.90;$$
$$\$3,499.90 - \$1,219.49 \text{ (amount already tendered)} = \$2,280.41.$$

(Docket No. 90 ¶ 11.)

the tax benefit derived from the spouses' decision to file jointly. (Docket No. 90, Ex. A; Docket No. 93 at 2.) The rest of the refund is then allocated based on the balance owed or the refund due as computed on *pro forma* married-filing-separately returns. (*Id.*)

At the Court's request, the Debtor filed a supplemental response on February 27, 2018, both to provide some general background about the bankruptcy case and to explain the circumstances of the filing of the elaborate response to the turnover motion.[8] (Docket No. 98.) Opting to stand on her motion, the Trustee declined the Court's subsequent invitation to file a reply, and the Court then took the matter under advisement. Having reviewed all of the relevant documents, exhibits, and arguments, as well as the applicable case law, the Court is now ready to rule.

## DISCUSSION

The sole issue in this matter is the proper allocation of the income tax refunds generated by the filing of joint returns by the Debtor and his non-debtor spouse. The Seventh Circuit Court of Appeals has not addressed how to divide such refunds outside the context of a marriage dissolution proceeding, and courts, both in the circuit and across the nation, are greatly divided on the question of the portion of tax refunds to which a debtor's estate is entitled when there is a joint return with a non-debtor spouse. Before examining the various approaches that courts have used to resolve the issue, as well as the hybrid method advanced by the Debtor, the Court first considers the validity and applicability of the Agreement.

---

[8] In his supplemental response, Debtor's counsel explains that he did extensive work on the response to the Trustee's motion for turnover because he seeks "to improve the . . . law" as lawyers are directed to do under the Rules of Professional Conduct of both the ABA and Illinois. (Docket No. 98 at 7-9.)

### 1. The Agreement

In response to the Trustee's contention that she neither knew of the Agreement nor authorized its execution, the Debtor posits two arguments. First, the Debtor maintains that the Trustee may not make the determination as to whether he and his non-debtor spouse file joint tax returns or elect to file separately. The Debtor is quite right. The taxpayer is the one who decides how he wants to file his income tax returns, and married couples who opt to file a joint return "may do so for any number of reasons, including receiving the economic value of any tax benefits derived from filing jointly." *In re Spina*, 416 B.R. 92, 98 (Bankr. E.D.N.Y. 2009); *see also Kleinfeldt v. Russell (In re Kleinfeldt),* 287 B.R. 291, 295 (B.A.P. 10th Cir. 2002) (noting that appellants filed jointly, "presumably to benefit from perceived tax advantages"). Regardless of the validity of the Debtor's claim, however, the Trustee here does not argue or suggest that she has the right to make elections with respect to the Debtor's filing of his income tax returns. The Debtor's first argument entirely misses the mark.

As to his second, the Debtor essentially argues that the Agreement governs the allocation of the tax refunds at issue. Specifically, the Debtor contends that the Trustee cannot bar him and his spouse from entering into an agreement that reasonably allocates the tax benefit derived from filing a joint tax return on a 50/50 basis. True, a married couple "has the right to determine . . . the appropriate allocation of a joint tax refund." *In re Duarte*, 492 B.R. 100, 109 (Bankr. E.D.N.Y. 2011). Once a bankruptcy petition has been filed, however, a debtor-spouse has an interest in only his or her share of the refund. *Id.; see also In re Innis*, 331 B.R. 784, 789 (Bankr. C.D. Ill. 2005) (requiring either a domestic relations court order or an enforceable, *pre-petition* contract between the spouses for an allocation other than equal ownership).

In this matter, the Agreement was executed almost eleven months *after* the Debtor filed his bankruptcy petition. In fact, the Agreement was drafted not for general financial planning or other pre-petition purposes but, by the Debtor's attorney's own admission, solely to effectuate the post-petition allocation described therein. Because it was executed after the Petition Date, the Agreement does not dictate the allocation of the joint tax refunds at issue. *See Innis*, 331 B.R. at 789 (explaining that domestic relations court orders or enforceable pre-petition contracts are needed to rebut the presumption of equal ownership because, among other things, they "eliminate[] uncertainty and provide[] guidance, in advance, to debtors and their attorneys that allows for effective prebankruptcy planning," and they "reduce[] the opportunity for parties to exaggerate or fabricate evidence in an effort to vest ownership of the refund in the nonfiling spouse"). Rather, in the absence of a pre-petition agreement between the parties, the determination as to the division of those refunds must be made by the Court. *See, e.g., Duarte*, 492 B.R. at 109.

### 2. The Allocation of the Joint Tax Refunds

In her motion, the Trustee seeks turnover of the bankruptcy estate's interest in the Debtor's 2016 tax refunds pursuant to §§ 541 and 542 of the Bankruptcy Code. Section 542(a) provides, in relevant part, that "an entity . . . in possession, custody, or control . . . of property that the trustee may use, sell, or lease . . . shall deliver to the trustee . . . such property or the value of such property." 11 U.S.C. § 542(a). A trustee bringing a motion for turnover bears the burden to prove that the property in question belongs to the bankruptcy estate. *Helms v. Roti (In re Roti)*, 271 B.R. 281, 291 (Bankr. N.D. Ill. 2002), *aff'd sub nom. Nelmark v. Helms*, No. 02 C 0925, 2003 WL 1089363 (N.D. Ill. Mar. 11, 2003); *see also Crowson v. Zubrod (In re Crowson)*, 431 B.R. 484, 489 (B.A.P. 10th Cir. 2010).

8

Property of the bankruptcy estate is "broad[ly]" defined in the Code, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983), encompassing "all legal or equitable interests of the debtor in property," 11 U.S.C. § 541(a)(1). Thus, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is [property of the estate] within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 134 S. Ct. 1188 (2014).

It is well established that the pre-petition portion of a debtor's tax refund is property of the bankruptcy estate under § 541(a)(1). *Kokoszka v. Belford*, 417 U.S. 642, 647-48 (1974); *Segal v. Rochelle*, 382 U.S. 375, 379-81 (1966); *In re Vongchanh*, No. 09 B 70050, 2009 WL 1852452, at *2 (Bankr N.D. Ill. June 29, 2009); *Innis*, 331 B.R. at 786. More precisely, a tax refund, or a portion thereof, that is received post-petition is estate property if it is attributable, in whole or in part, to a debtor's pre-petition wages and withholding payments. *Carlson v. Moratzka (In re Carlson)*, 394 B.R. 491, 493 (B.A.P. 8th Cir. 2008); *Kleinfeldt*, 287 B.R. at 293; *In re Lock*, 329 B.R. 856, 858 (Bankr. S.D. Ill. 2005).

Although what constitutes property of the estate is a question of federal law under § 541, state law determines whether a debtor has an interest in property in the first instance. *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Accordingly, courts must turn to applicable state law to determine each spouse's specific property interest in joint tax refunds. *In re Ruhl*, 474 B.R. 596, 599 (Bankr. N.D. Ill. 2012); *Duarte*, 492 B.R. at 103. Bankruptcy law then resolves the extent to which that interest is property of the estate. *Crowson*, 431 B.R. at 489.

9

In this matter, the Debtor is a resident of Illinois. Thus, the Debtor's interest in the tax refunds here is governed by Illinois law. There is, however, no property law in Illinois, or in various other states, that defines or dictates the rights of spouses to tax refunds in the context at bar or otherwise specifies the appropriate allocation of those joint refunds between spouses. *See, e.g., Ruhl*, 474 B.R. at 599; *see also Lock*, 329 B.R. at 859 (explaining that "it is state property law . . . that is applicable for purposes of § 541(a)").

As a result, bankruptcy courts confronted with this issue have turned to other areas of the law for guidance and, in doing so, have developed four primary approaches to determine the portion of joint tax refunds to which a debtor's estate is entitled when a joint return has been filed with a non-debtor spouse. The Court will address each approach in turn, as well as the hybrid method advanced by the Debtor.

### A. The 50/50 Rule

The minority approach, and the one advocated by the Trustee, applies the "50/50 Rule" to allocate a joint tax refund equally between the spouses, regardless of tax withheld, income produced, or credits applied. *See, e.g., In re Baker*, No. 11-92003, 2012 WL 2564369, at *2 (Bankr. C.D. Ill. July 2, 2012); *Spina*, 416 B.R. at 96, 99; *Vongchanh*, 2009 WL 1852452, at *2; *In re Marciano*, 372 B.R. 211, 214, 216 (Bankr. S.D.N.Y. 2007); *Innis*, 331 B.R. at 789; *In re Barrow*, 306 B.R. 28, 30-31 (Bankr. W.D.N.Y. 2004); *In re Hejmowski*, 296 B.R. 645, 646 n.1 (Bankr. W.D.N.Y. 2003); *Loevy v. Aldrich (In re Aldrich)*, 250 B.R. 907, 911-13 (Bankr. W.D. Tenn. 2000). The 50/50 Rule creates a presumption that each spouse contributed equally to the household, including nonmonetary contributions, and that, thus, the joint tax refund should be apportioned equally between the spouses.

*Spina,* 416 B.R. at 97; *Vongchanh,* 2009 WL 1852452, at *2; *Innis,* 331 B.R. at 787-88; *Hejmowski,* 296 B.R. at 646 n.1; *Aldrich,* 250 B.R. at 912-13.

Some courts find that the presumption of equal ownership may be rebutted by demonstrating that the couple's "present conduct or history of financial management" suggests separate fiscal affairs. *Barrow,* 306 B.R. at 31; *see also Spina,* 416 B.R. at 97; *Marciano,* 372 B.R. at 214; *Aldrich,* 250 B.R. at 912-13. At least one court has disagreed, explaining that equal ownership of a tax refund may be rebutted only by evidence of "a domestic relations court order or an enforceable, written, prepetition contract between the spouses designating alternative ownership of the refund." *Innis,* 331 B.R. at 789.

Courts that have adopted the 50/50 Rule view marriage as a shared, economic "partnership," finding that a joint tax refund should be treated as marital property and, thus, equitably distributed. *Marciano,* 372 B.R. at 215-16; *see also Spina,* 416 B.R. at 96-97; *Vongchanh,* 2009 WL 1852452, at *3; *Innis,* 331 B.R. at 787-88. Accordingly, these courts rely on their state matrimonial or domestic relations law in allocating joint tax refunds between debtors and their non-debtor spouses. *Marciano,* 372 B.R. at 214; *Innis,* 331 B.R. at 787-88. Although it is generally understood that property law, not domestic relations law, is applicable for determining parties' interests for purposes of § 541(a), *see, e.g., Lock,* 329 B.R. at 859, one court that employed the 50/50 Rule explained that "there appears to be no other property law that offers more helpful guidance in apportioning each spouse's property interest," *Marciano,* 372 B.R. at 215.

Underlying the concept of equal ownership is the imposition of joint liability for any tax deficiency that results from the filing of a joint tax return. That is, when a married couple files a joint return, the spouses become jointly and severally liable for any tax liability. 26 U.S.C. §

6013(d)(3); *Spina,* 416 B.R. at 98 (citing the Internal Revenue Code); *Vongchanh*, 2009 WL 1852452, at *3 (same). Accordingly, courts applying the 50/50 Rule have explained that it would be "inconsistent and fundamentally unfair" to find that a non-debtor spouse was "jointly responsible and liable for a joint federal income tax deficiency" yet not allowed to share in the "good fortune of a tax refund." *Aldrich*, 250 B.R. at 912; *see also Spina,* 416 B.R. at 99; *Innis* 331 B.R. at 787-88; *Hejmowski*, 296 B.R. at 646 n.1.

In addition to their rationales and policy reasons, courts that have employed the 50/50 Rule prefer the approach for allocating joint tax refunds because it provides a bright-line test that is easy to understand and apply. *In re Trickett*, 391 B.R. 657, 663 (Bankr. D. Mass. 2008); *see Lee v. Walro (In re Lee)*, 508 B.R. 399, 405 (S.D. Ind. 2014). Those courts extol the Rule as a reasonable, simple, and fair method which avoids the sometimes difficult questions of proof that can arise when division of such refunds is at issue. *Barrow*, 306 B.R. at 32; *see also In re Nevins*, 564 B.R. 151, 154-55 (Bankr. D.N.H. 2016).

### B.   The Income Rule

A second approach, the "Income Rule," divides joint tax refunds proportionally according to the income generated by each spouse. *See, e.g., Judson v. Levine (In re Levine)*, 50 B.R. 587, 587 (Bankr. S.D. Fla. 1985); *Lieshout v. Verill (In re Verill)*, 17 B.R. 652, 655 (Bankr. D. Md. 1982); *In re Kestner*, 9 B.R. 334, 336 (Bankr. E.D. Va. 1981); *In re Colbert*, 5 B.R. 646, 648-49 (Bankr. S.D. Ohio 1980). Courts applying the Income Rule have provided varied and tenuous rationales for doing so. *See, e.g., Verill*, 17 B.R. at 655 (finding that "prorating a tax refund" between spouses "based upon each spouse's annual earnings is presumptively fair and equitable"); *Colbert*, 5 B.R. at 648 (explaining that "income tax liability arises from the receipt of income").

12

Although the Income Rule is easy to administer, most courts assessing the approach "immediately recognize the flaw in dividing [a joint] refund on a factor which may have very little to do with actual contributions to the total tax obligations between spouses." *Duarte*, 492 B.R. at 105; *see also Monticello Arcade Ltd. P'ship v. Lyall (In re Lyall)*, 191 B.R. 78, 85 (E.D. Va. 1996) (explaining that allocating a return in proportion to each spouse's income is problematic because the spouses may have the same income, but one might withhold more than the other); *Nevins*, 564 B.R. at 155; *Hejmowski*, 296 B.R. at 646 n.1. For that reason, the Income Rule has little support and has effectively been superseded by the "Withholding Rule," discussed below.

### C.   The Withholding Rule

The majority of courts follows the "Withholding Rule," under which the refund is allocated between spouses in proportion to their respective tax withholdings during the relevant tax year. *See, e.g., Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir. 1985); *Carlson*, 394 B.R. at 494; *Kleinfeldt*, 287 B.R. at 292; *Lyall*, 191 B.R. at 85; *Ruhl*, 474 B.R. at 597; *In re Gartman*, 372 B.R. 790, 796 (Bankr. D.S.C. 2007); *Lock*, 329 B.R. at 858, 860; *In re Smith*, 310 B.R. 320, 323-24 (Bankr. N.D. Ohio 2004); *In re WDH Howell, LLC*, 294 B.R. 613, 618 (Bankr. D.N.J. 2003); *In re Gleason*, 193 B.R. 387, 389 (Bankr. D.N.H. 1996).

Fundamental to the Withholding Rule is the premise that the filing of a joint tax return does not change the property rights between the spouses. *Kleinfeldt*, 287 B.R. at 293; *Lyall*, 191 B.R. at 85. Rather, courts employing the Withholding Rule have explained that spouses who jointly file tax returns have separate legal interests in any overpayment, "'the interest of each depending upon his or her relative contribution to the overpaid tax.'" *Kleinfeldt*, 287 B.R. at 293 (quoting *United States v. Elam*, 112 F.3d 1036, 1038 (9th Cir. 1997)). Indeed, "[a] tax refund essentially represents a

13

repayment by the government to the taxpayer of an overpayment made by the taxpayer." *Id.* Accordingly, that refund is the "property" of the taxpayer "who earned the income and overpaid the tax." *Carlson,* 394 B.R. at 494; *see also Ruhl,* 474 B.R. at 599 (concluding that, under both the Internal Revenue Code and Illinois property law, "the recipient of the income withheld for payment of income taxes . . . is entitled to any tax refund resulting from the withholding" (internal quotation omitted)).

Courts supporting the Withholding Rule find the approach easy to administer, efficient, and presumptively fair and equitable. *See, e.g., Lyall,* 191 B.R. at 86 & n.3; *Gartman,* 372 B.R. at 795. Those rejecting the Rule contend that it is too limited, focusing on only one component that creates the refund and, thus, producing "a distorted picture" of the origin of the refund. *Nevins,* 564 B.R. at 155 (quoting *Hundley v. Marsh,* 944 N.E.2d 127, 133 (Mass. 2011)); *see also Crowson,* 431 B.R. at 490; *Duarte,* 492 B.R. at 104, 107-08.

### D.  The Separate Filings Rule

Some critics claiming that the Withholding Rule is not the most exact method for allocating a joint tax return between debtors and their non-debtor spouses have adopted the "Separate Filings Rule." Under that Rule, the refund is apportioned based on a determination of what each spouse's contributions and tax liabilities would have been if the spouses had filed separately, and then that proportion is applied to the joint tax refund resulting from the filing of a joint return. *See, e.g., Crowson,* 431 B.R. at 490-96; *Lee,* 508 B.R. at 405-07; *Nevins,* 564 B.R. at 152, 155-56; *Duarte,* 492 B.R. at 101, 106; *In re Hraga,* 467 B.R. 527, 531 (Bankr. N.D. Ga. 2011); *In re Palmer,* 449 B.R. 621, 626-28 (Bankr. D. Mont. 2011); *In re Evans,* 449 B.R. 827, 831 (Bankr. N.D. Ga. 2010).

14

First articulated by the Tenth Circuit Bankruptcy Appellate Panel in *Crowson* in 2010, the Separate Filings Rule is derived from both revenue rulings and manual provisions of the Internal Revenue Service (the "IRS") that address the allocation of overpayments between taxpayers filing joint returns. 431 B.R. at 490-91. Although those rulings and provisions are not binding, courts have found them to be valid and persuasive, providing helpful guidance on the issue, and have given them deference under various circumstances. *Id.*; *Duarte*, 492 B.R. at 105, 108.

The formula used under the Separate Filings Rule is based on IRS Revenue Ruling 74-611, in which the IRS ruled that when spouses file a joint return, each has a separate interest both in the reported income and in any overpayment. *Crowson*, 431 B.R. at 491 (citing Rev. Rul. 74-611, 1974-2 C.B. 399); *Lee*, 508 B.R. at 406; *Duarte*, 492 B.R. at 105, 108. Those principles were applied in Revenue Ruling 80-7 to determine what portion of a couple's joint tax refund could be retained by the IRS to offset one spouse's individual tax liability from a prior year. *Crowson*, 431 B.R. at 491; *Lee*, 508 B.R. at 406; *Nevins*, 564 B.R. at 156; *Duarte*, 492 B.R. at 105-06. In devising a formula for purposes of offset, the IRS "borrowed" the method it had previously used to calculate a decedent's separate tax liability (or refund) that had been generated by a joint tax return with the surviving spouse. *Crowson*, 431 B.R. at 491; *Nevins*, 564 B.R. at 156; *Duarte*, 492 B.R. at 105-06. Based on these rulings, courts have concluded that "allocating tax liability and credits between a decedent's estate and the surviving spouse, or between spouses for the purpose of offsetting only one spouse's refund against a prior liability, is analogous to allocating the tax liabilities and refunds between a bankruptcy estate and a non-filing spouse." *Crowson*, 431 B.R. at 491; *Duarte*, 492 B.R. at 106 (quoting *Crowson*).

To apply the formula under the Separate Filings Rule, the first step is to calculate each spouse's contribution to the "total payments," including withholdings, estimated tax payments, and refundable credits, such as the Earned Income Credit, the Additional Child Tax Credit, and the Rebate Recovery Credit. *Crowson*, 431 B.R. at 491-95. This is accomplished by computing each spouse's contribution to each type of payment and then adding those contributions together to determine a total contribution figure for each spouse. *Id.* The second step is to calculate the tax liability that each spouse would have incurred on his or her separate income by determining each spouse's hypothetical married-filing-separately ("MFS") tax liability. *Id.* at 492. Each spouse's MFS liability is then divided by the sum of both spouses' MFS liabilities, which results in the percentage of the joint tax liability to be attributed to each spouse. *Id.* Finally, each spouse's share of the joint tax liability is subtracted from the sum of all of his or her contributions to the "total payments" to arrive at a figure representing the spouse's share of the joint tax refund. *Id.*

Courts adopting the Separate Filings Rule favor the approach because it considers each spouse's withholdings, estimated tax payments, income, and contributions as a whole, rather than focusing on just one of those factors. *Lee*, 508 B.R. at 405-06; *Nevins*, 564 B.R. at 156; *Duarte*, 492 B.R. at 106. According to courts supporting the Rule, it provides a comprehensive, blended methodology that most accurately determines the spouses' rights to a joint tax refund under the totality of the circumstances. *Id.*

### E.   The Debtor's Hybrid Approach

The Debtor urges the Court to adopt a "hybrid" of the 50/50 and Separate Filings Rules, as detailed in and supported by the Agreement. According to the Debtor, none of the four approaches that have been used by the courts fully analyzes the issue, each resulting "at times" in "potentially

inequitable and/or improper allocations of income tax refunds" between debtors and their non-debtor spouses. (Docket No. 93 at 2.) In contrast, the Debtor says, his "Hybrid Approach" is "superior" to the others and has never been considered by any court. (*Id.* at 2 & 3.)

Pursuant to the Hybrid Approach, any tax benefit derived from the spouses' decision to file jointly is equally divided between them, and the rest of the refund is then allocated based on the balance owed or the refund due as calculated on hypothetical MFS tax returns. To apply the formula under the Hybrid Approach, the Debtor explains, the first step is to identify and apportion to each spouse all tax payments made by that spouse. (*Id.* at 11-13.) Step two is to allocate the joint tax liability (determined before payment credits) based on each spouse's proportionate share of combined MFS tax liability reduced by one-half of the tax benefit generated from filing a joint return. (*Id.*)

The Debtor argues that the 50/50, Income, and Withholding Rules render "absurd" and "irrational" results because those approaches cause a decrease in one spouse's share of the refund and an increase in the other spouse's share, even though the spouses' combined tax liability is reduced by a decision to file jointly. (*Id.* at 6-11.) The Debtor contends that, in contrast, "under virtually any set of facts" employing the Hybrid Approach, the bankruptcy estate is "always improved by a decision to file jointly that results in a reduction of the combined tax liability." (*Id.* at 10.)

In sum, the Debtor claims that the Hybrid Approach considers all factors relevant in allocating a joint tax refund between debtors and their non-debtor spouses and "properly and equitably" divides the refund under "virtually every circumstance." (*Id.* at 14.) Specifically, he says, the Approach examines and integrates: (1) the relative income and payments from all sources of the

17

spouses; (2) their deductions and credits; (3) the amount of the tax benefit derived from filing a joint

tax return; (4) each spouse's right to retain his or her refund as separate property; and (5) the tax

exposure risk that each spouse takes when deciding to file jointly.  (*Id.*)

### F.  The Applicable Approach

Upon review of the five different approaches described above, the Court finds the analysis

in the cases applying the Withholding Rule to be the better reasoned.  Moreover, given the particular

circumstances in the matter at bar, the Court believes that applying the Withholding Rule to divide

the joint refunds between the Debtor and his non-debtor spouse results in a precise, efficient, and

equitable allocation.

Although the 50/50 Rule provides an easy-to-administer, bright-line test, the Court finds that

the approach is not appropriate for determining the rights of spouses to a tax refund in the context

of bankruptcy. As discussed in connection with the Withholding Rule, the filing of a joint tax return

does not transform a refund into joint property. *Elam*, 112 F.3d at 1038; *Carlson*, 394 B.R. at 495-

96; *Kleinfeldt*, 287 B.R. at 293; *Lyall*, 191 B.R at 85; *WDH Howell*, 294 at 620.  Thus, spouses who

file jointly have separate interests in any overpayment, and refunds are made under the Internal

Revenue Code to the spouse who made the tax payment. *Elam*, 112 F.3d at 1038; *Carlson*, 394 B.R.

at 495-96;  *Kleinfeldt*, 287 B.R. at 293; *Ruhl*, 474 B.R. at 599.

Moreover, as explained above, the 50/50 Rule relies on the notion of marital property found

in state domestic relations law. *See Marciano*, 372 B.R. at 214; *Innis*, 331 B.R. at 787-88.  That law,

however, applies only when spouses are seeking a dissolution of marriage.  *Crowson*, 431 B.R. at

489 (finding that "the equitable division concept does not arise until the parties seek a divorce");

*Carlson*, 394 B.R. at 495. Illinois, in particular, "does recognize a form of 'marital property'

acquired by spouses during a marriage, but this type of ownership" vests only "at the time [marriage]

dissolution proceedings are commenced." *Ruhl*, 474 B.R. at 599 (quoting 750 ILCS 5/503(e)). In

fact, the Illinois Supreme Court has expressly "confirmed the limited scope" of the Illinois Marriage

and Dissolution of Marriage Act by explaining that "'[o]peration of the term 'marital property' under

the Act is not triggered until the time of dissolution.'" *Id.* at 600 (quoting *Kujawinski v. Kujawinski*,

376 N.E.2d 1382, 1386-87 (Ill. 1978)); *see also Graver v. Ill. Dep't of Pub. Aid*, 381 N.E.2d 1044,

1046 (Ill. App. Ct. 1978). "[I]t would be wholly [improper] in a bankruptcy [case] to borrow the

concept of marital property which exists under [state domestic relations law], where the primary

purpose is to determine how to equitably divide assets between divorcing spouses." *Duarte*, 492

B.R. at 101; *see also Lock*, 329 B.R. at 859.

Indeed, the goal of bankruptcy is entirely different. Rather than seeking to equitably allocate

assets between spouses based on their individual needs and means of support, bankruptcy courts are

concerned with the orderly distribution of assets among the creditors of the debtor. *Crowson*, 431

B.R. at 489; *Carlson*, 394 B.R. at 495; *Lee*, 508 B.R. 404; *Lock*, 329 B.R. at 859 n.3; *WDH Howell*,

294 B.R. at 617. In fact, the policy underlying domestic relations law is inconsistent with the policy

underlying bankruptcy law, as it divides property between spouses at the possible expense of the

debtor's creditors. *Crowson*, 431 at 489; *Duarte*, 492 B.R. at 107. Adopting the idea of marital

property from domestic relations law to determine the Debtor's interest in the joint tax refunds here

does not further the goals of bankruptcy.

Ultimately, dividing a joint tax refund equally between spouses under the 50/50 Rule can

result in a distribution completely unrelated to the refund that each spouse would have received had

separate tax returns been filed. *Lyall*, 191 B.R. at 85. Allocating the refund in proportion to the

19

income earned by each spouse "raises the same concerns." *Id.* Accordingly, the Court rejects both the 50/50 Rule and the Income Rule.

At the other end of the spectrum, the Separate Filings Rule generally considers everything that each spouse contributed–taxes withheld, estimated payments, income, and credits–in determining the spouses' interests in a joint tax refund. *Lee,* 508 B.R. at 405-06; *Nevins,* 564 B.R. at 156; *Duarte,* 492 B.R. at 106. By examining all of these factors, application of the Separate Filings Rule takes into account all of the circumstances in each case and should result in a thorough and accurate allocation of the refund.

Notwithstanding the foregoing, the Court echoes the concerns of the critics of the Separate Filings Rule. Namely, the Rule can be difficult to understand and employ. *See, e.g., Duarte,* 492 B.R. at 108 (adopting the Rule but agreeing that it may be "somewhat difficult to apply"); *see also Nevins,* 564 B.R. at 156. It can also be complex, cumbersome, and unwieldy. *See, e.g., Duarte,* 492 B.R. at 108 (discussing the drawbacks articulated by other courts). And applying the Rule typically requires the employment of tax professionals, the preparation of hypothetical married-filing-separately tax returns, and the use of sophisticated calculations. Accordingly, the adoption of such a rule would undoubtably "cause the workload of bankruptcy trustees to increase exponentially," and, in many cases, including this one, "the time and expense would be wholly disproportionate to the amount of [the] refund at issue." *Lee,* 508 B.R. at 408 (internal quotations omitted) (discussing the trustee's concerns).

Some courts embracing the Separate Filings Rule have acknowledged that the approach "may not be appropriate in all cases." *Lee,* 508 B.R. at 408; *see also Crowson,* 431 B.R. at 496. In fact, *Crowson* counseled that "[w]hether a trustee should undertake this analysis should, like any other

business decision . . . , be decided case-by-case in the prudent exercise of [the trustee's] business

judgment in the context of the economies of the particular matter" and that "[w]hether a debtor or

a non-filing spouse should incur the expense of mounting a defense to such an effort will be based

upon the same reasoning." 431 B.R. at 496.

The Court recognizes that the Separate Filings Rule should create accurate and fair results.

However, application of the Rule is impractical and inefficient. As a result, the Court declines to

generally adopt either the Separate Filings Rule or the Debtor's Hybrid Approach which incorporates

it.

As to the latter, the Court observes that, contrary to the Debtor's contention that the Hybrid

Approach has never been considered by any court, the *Lyall* court proposed–and then rejected–such

an approach over twenty years ago, albeit in a footnote. 191 B.R. at 86 n.3. Specifically, that court

noted that, "[i]n actuality, the most exact method of determining the refund to which a husband and

wife would be entitled had they filed individually is to figure their tax liability as if they had filed

individually, divide any benefit from a joint filing equally between the two, and then ascertain the

amount of the refund due each." *Id.* Agreeing that "this method is accurate," the court found that

"it is also time-consuming and basically unnecessary." *Id.* Rather, *Lyall* said, allocating a tax refund

using the Withholding Rule "strikes a sensible balance between absolute precision and the need for

equity and efficiency." *Id.* This Court agrees.

Given the circumstances in this particular matter, the Withholding Rule provides a precise

and fair allocation of the joint tax refunds between the Debtor and his spouse. *See Crowson*, 431

B.R. at 490 (explaining that the choice of approach depends on the circumstances of each case). The

refunds here are almost exclusively comprised of income taxes withheld from the wages of both

spouses, along with a small amount of estimated payments that the spouses made for the relevant tax year.[9] Thus, in employing the Withholding Rule in the case at bar, the Court considers both the spouses' respective tax withholdings and their estimated tax payments. *See id.* at 492 & n.29 (explaining that both withholding-based payments and estimated tax payments are deemed contributions by the spouse whose income was withheld). Using the Withholding Rule to divide the refunds proportionally between the Debtor and his spouse in accordance with their withholdings and estimated payments appropriately quantifies their separate interests in those refunds.

Applying the Withholding Rule, the Court finds that the Debtor is required to turn over to the Trustee, in addition to the monies already tendered, a total of $5,035.42. This figure is calculated as follows:

[$7,078 (joint refunds) × $56,045 (MFS withholding and estimated payments for the Debtor)]

÷ $63,420 (combined MFS withholding and estimated payments) = $6,254.91;

$6,254.91 - $1,219.49 (amount already tendered) = $5,035.42.[10]

Despite these calculations, the undersigned does not profess to be a tax professional or to have accounting expertise. Accordingly, the parties are directed to review the above calculations in conjunction with the figures reflected in the various tax returns prepared and submitted by the

---

[9] The Debtor and his spouse also claimed a residential energy tax credit on their joint federal return. To the extent that that credit is treated as a payment pursuant to the Internal Revenue Code and can affect the amount of the tax refund, *see* 26 U.S.C. § 6401(b)(1); *see also Duarte*, 492 B.R. at 104, the credit was only $300, which was apportioned equally between the spouses, making it essentially inconsequential.

[10] The Debtor's spouse's share of the joint tax refunds is $823.09 and is computed similarly, as follows:

[$7,078 (joint refunds) × $7,375 (MFS withholding and estimated payments for the Debtor's spouse)]

÷ $63,420 (combined MFS withholding and estimated payments) = $823.09.

Debtor's attorney and to consensually make any necessary adjustments to the turnover figure consistent with the Withholding Rule found applicable by the Court.

## CONCLUSION

For the foregoing reasons, the Court finds that the proper method for apportioning the joint tax refunds between the Debtor and his non-debtor spouse is the "Withholding Rule." Applying that Rule, the Court further finds that, absent adjustments made consensually by the parties as discussed above, the estate's interest in the refunds totals $6,254.91. As such, the Trustee's motion for turnover is granted in part, and the Debtor is ordered to turn over to the Trustee, in addition to the monies already tendered, the sum of $5,035.42.

Dated: **November 15, 2019**                    **ENTERED:**

Janet S. Baer
United States Bankruptcy Judge